# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MEL MARIN,** | : | **CIVIL NO. 1:15-CV-1550** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **THE SECRETARY OF THE** | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA,  et al.,** | : | |
| | : | |
| **Defendants.** | : | |

# REPORT AND RECOMMENDATION

## I.    Statement of Facts and of the Case

In this case we are called upon, once again,[1] to assess the legal sufficiency of

the efforts of Mel Marin, the *pro se* plaintiff, to sue his way onto a seat in the United

States House of Representatives. Marin, who currently resides in Ohio,(Doc. 22),[2] is

---

[1]We had previously conducted a screening review of Marin's initial complaint, a review which led to a recommendation that the complaint be dismissed. (Doc. 5.) This recommendation was adopted by the district court, (Doc. 9 ), and Marin filed an amended complaint, (Doc. 10 ) which is now the subject of a motion to dismiss. (Doc.13.)

[2]To the extent that Marin seeks prospective relief from this court in the form of an order somehow qualifying him to be elected to Congress in Pennsylvania, his current residency in Ohio may present an impediment to such relief since the

a prodigious and prodigiously unsuccessful litigant in federal court, and has been

aptly been described in the following terms:

> Plaintiff, also known as Melvin M. Marinkovic, is a serial *pro se* filer
> who has filed vexatious litigation in this court in <u>Mel Marin v. The Erie
> Times, et al.</u>, 1:11cv102 (Doc. No. 18), <u>aff'd</u>, 525 F. App'x 74 (3d
> Cir.2013); <u>In re: Joseph Fragile, et al.</u>, 2:11cv788 (Doc. No. 8); <u>In re:
> Joseph Fragile, et al.</u>, 2:11cv789 (Doc. No. 7), <u>Mel Marin v. Tom Leslie,
> et al.</u>, 2:09cv1453 (Doc. No.s 57 & 58) and <u>Melvin M. Marinkovic v.
> Mayor Joseph Sinnott, et al.</u>, 1:12cv139 (Doc. No. 21). He also has filed
> over 70 proceedings in other jurisdictions and been placed on the
> "Vexatious Litigant List" by the State of California in connection with
> a filing in the San Diego Superior Court at No. 720715. See Transmittal
> Statement of the Bankruptcy Court to Accompany Notice of Appeal
> (Doc. No. 1–14) <u>in In re: Joseph Fragile, et al.</u>, 2:11cv789 (W.D. Pa.
> June 15, 2011) at 6 n.3.

<u>Marin v. Biros</u>, No. 2:11CV884, 2014 WL 2600223, at *1 (W.D. Pa. June 10, 2014).

In the instant case, the operative pleading before the court is Marin's first

amended complaint, his original complaint having been dismissed by this court. (Doc.

10.) This first amended complaint is a 38 page, 170 paragraph pleading. This *pro se*

pleading contains an array of claims, all of which appear to be bound together by

Marin's Congressional ambitions. This amended complaint also seems to reprise a

---

United States Constitution provides that: "No Person shall be a Representative
who shall not have attained to the Age of twenty five Years, and been seven Years
a Citizen of the United States, and who shall not, when elected, be an Inhabitant of
that State in which he shall be chosen."  U.S. Const. art. I, § 2, cl. 2

series of claims and allegations which we had previously found wanting on an initial screening evaluation of Marin's first *pro se* complaint, repackaging these claims and allegations in a form which adds little substance to these prior, discredited claims. Thus, the amended complaint continues to recite an odd gestalt of parties, claims and averments, coupled with Marin's idiosyncratic views on the law, and various personal polemics.

Liberally construed, Marin's *pro se* amended complaint advances a broad set of claims aimed both at Marin's past Congressional failures and his future Congressional aspirations. Turning first to Marin's past electoral failures, this *pro se* complaint lodges a series of claims which appear to relate to Marin's unsuccessful efforts to obtain the democratic nomination for a Congressional seat in Western Pennsylvania in the Spring of 2014. According to Marin's complaint, a registered democratic elector successfully challenged his nominating petitions in litigation conducted before the Commonwealth Court, and later upheld by the Pennsylvania Supreme Court. In re Marin, 106 A.3d 678 (Pa. 2014) cert. dismissed sub nom. Marin v. Rice, 135 S. Ct. 2382 (2015). Marin alleges that these state court judgments were void because he had endeavored to remove this state case to federal court, but neglects to mention that his removal petition was rejected by the district court; In re Nomination Petition of Mel M. Marin for the Democratic Nomination for Member of

3

Cong. in the 3rd Cong. Dist., No. 1:14-CV-669, 2014 WL 1612665, at *1 (M.D. Pa. Apr. 22, 2014), and the decision denying this removal petition was upheld by the United States Court of Appeals for the Third Circuit.  In re Marin, 567 F. App'x 67 (3d Cir. 2014).

Not allowing these stubborn facts to get in the way of his litigative narrative, Marin continues to invite us to issue wide-ranging equitable and declaratory relief which would effectively nullify the outcome of this past litigation, and set aside the electoral outcome of a past Congressional race in Western Pennsylvania, a location outside the venue of this court, by ordering a new "special" election for Marin, an act which would effectively set aside the judgment of the electorate. Marin also lodges numerous other claims for declaratory relief, seeking serial declarations that various aspects of Pennsylvania's election laws violated his fundamental constitutional rights. (Doc. 10, ¶¶57-130.) Finally, Marin seeks extraordinary damages, demanding 20 years worth of the Congressional salary which he would have presumably received had he won the election, a sum that  Marin calculates to be $3,900,000, along with punitive damages of $3,000,000 and an additional $3,000,000 in damages for alleged impairment of his First Amendment rights. The parties from whom Marin seeks these damages are not entirely clear. Although Marin mentions a past and current Secretary

of the Commonwealth in his complaint, he also names as defendants agencies of state government including the State Board of Elections.

The Commonwealth defendants have now moved to dismiss this amended complaint. (Doc. 13.) This motion to dismiss is fully briefed by the parties, and is therefore ripe for resolution. For the reasons set forth below, it is recommended that th motion to dismiss be granted and Marin's complaint be dismissed.

## II.   Discussion

### A.   Motion to Dismiss–Standard of Review

The defendants have moved to dismiss this case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Id. at 678.  Rather, in conducting a review of

the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions.  Rather, a complaint must recite factual

allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation. As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal  conclusions.  Second, a District Court must
> then determine whether the facts alleged in the complaint are sufficient
> to  show that the plaintiff has a "plausible claim for relief." In other
> words, a complaint must do more than allege the plaintiff's entitlement
> to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed: "The Supreme Court in Twombly set

forth the 'plausibility' standard for overcoming a motion to dismiss and refined this

approach in Iqbal. The plausibility standard requires the complaint to allege 'enough

facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In  practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

In this regard, one of the basic requisites for a civil complaint is that it must recites some essential facts tying the defendants to some alleged misconduct. This fundamental requirement is driven both by matters of principle, and by pragmatic considerations. As a matter of principle and practice, a basic factual recital is essential in a complaint because it is simply impossible without such averments to properly assign individual responsibility to a particular defendant without some factual description of what has transpired. Therefore, it is incumbent upon a plaintiff to describe who he seeks to sue, and what these parties did that violated the plaintiff's rights. When a plaintiff fails in this basic responsibility, it is the duty of the court to

dismiss his claims. See, e.g., Moss v. United States, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint);  Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v. Ling, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); Gearhart v. City of Philadelphia Police, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) dismissing illegible complaint). Further, in order to satisfy the strictures of Rule 8, a complaint must also contain a coherent prayer for relief, demanding relief from a defendant that lies within the power of the defendant to provide.  See Klein v. Pike Cnty. Comm'rs, CIV.A. 11-278, 2011 WL 6097734 (M.D. Pa. Dec. 6, 2011)(failure to articulate a prayer for relief compels dismissal); Snyder v. Snyder, 4:12-CV-105, 2012 WL 512003 (M.D. Pa. Jan. 24, 2012) report and recommendation adopted, 4:12-CV-105, 2012 WL 511993 (M.D. Pa. Feb. 15, 2012)(same).

Applying these legal benchmarks, for the reasons set forth below, we conclude that this amended complaint remains fatally flawed on multiple grounds and should, therefore, be dismissed.

**B.     This Amended Complaint Fails to State A Claim Upon Which Relief Can Be Granted**

In this case, dismissal of this amended complaint is warranted because Marin's pleading fails on numerous scores to meet the substantive standards required by law, in that it does not set forth a "short and plain" statement of a cognizable violation of some right guaranteed by the Constitution or laws of the United States. The flaws in the *pro se* complaint lodged by Marin, "a serial *pro se* filer who has filed vexatious litigation in" in federal court in the past, <u>Marin v. Biros</u>, No. 2:11CV884, 2014 WL 2600223, at *1 (W.D. Pa. June 10, 2014),  are discussed separately below.

**1.     This Amended Complaint Continues to Violate Rule 8 of the Federal Rules of Civil Procedure**

At the outset, dismissal of this amended complaint is warranted because the amended complaint still fails to comply with Rule 8's basic injunction that: "A pleading that states a claim for relief must contain . . . *a short and plain statement of the claim* showing that the pleader is entitled to relief." Dismissal of this complaint is appropriate since it is well-settled that: "[t]he Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." <u>Scibelli v. Lebanon County</u>, 219 F. App'x 221, 222 (3d Cir. 2007). Thus, when a complaint is "illegible or incomprehensible", <u>id.</u>, or when a complaint "is also largely unintelligible,"

Stephanatos v. Cohen,  236 F. App'x 785, 787 (3d Cir. 2007), an order dismissing a complaint under Rule 8  is clearly appropriate.  See, e.g., Mincy v. Klem, 303 F. App'x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F. App'x 513 (3d Cir. 2008); Stephanatos v. Cohen. supra; Scibelli v. Lebanon County, supra; Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 450 n.1 (5th Cir. 2005). Furthermore, dismissal under Rule 8 is proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action];" Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response. Tillio v. Spiess, No. 11-1276, 2011 WL 3346787 (Aug. 4, 2011). Finally, a complaint may be dismissed under Rule 8 when the pleading is simply illegible and cannot be understood. See, e.g., Moss v. United States, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v. Ling, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); Gearhart v. City of Philadelphia Police, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) (dismissing illegible complaint).

Here, this amended complaint is voluminous, but often argumentative and incomprehensible. The amended complaint, which totals 38 pages and is 170

paragraphs in length, hardly "contain[s] 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and [fails to meet Rule 8's requirement] that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." Scibelli v. Lebanon County, 219 F. App'x 221, 222 (3d Cir. 2007). Further, the 170 averments set forth in the complaint still consist of an array of factual averments, coupled with Marin's idiosyncratic views on the law, and various personal polemics written in a stream of consciousness style which often are presented without any context, content, coherence or continuity, making it virtually impossible to ascertain the legal and factual significance of these allegations. Thus, we are "left . . . having to guess what of the many things discussed constituted [a cause of action]." Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011). Further, in some instances the relief Marin seeks–a court order directing that Marin receive a "special" election to Congress from a Congressional district outside the venue of this court– fails to set forth a coherent prayer for relief, demanding relief that lies within the power of the defendant to provide. See Klein v. Pike Cnty. Comm'rs, CIV.A. 11-278, 2011 WL 6097734 (M.D. Pa. Dec. 6, 2011)(failure to articulate a prayer for relief compels dismissal); Snyder v. Snyder, 4:12-CV-105, 2012 WL 512003 (M.D. Pa. Jan. 24, 2012) report and recommendation adopted, 4:12-CV-105, 2012 WL 511993 (M.D. Pa. Feb. 15, 2012)(same). In such instances, Rule 8 calls for the dismissal of the complaint.

2.      **To the Extent That Marin Seeks to Re-litigate Claims That Were Previously Rejected By Other Courts the Doctrine of Collateral Estoppel Applies and Bars Re-litigation of These Matters**

In addition, Marin's amended complaint appears to persist in efforts to attempt to re-litigate a matter which has previously been conclusively resolved by the state and federal courts. Specifically, it appears that Marin still wishes to relitigate his unsuccessful defense of his 2014 nominating petition in state court, and his equally unsuccessful efforts to remove that state case to federal court in 2014. In our view, upon a review of Marin's amended complaint, the *res judicata*, collateral estoppel and issue preclusion doctrines apply and compel dismissal of any of the previously litigated claims that are made by the plaintiff in this complaint relating to this prior unsuccessful state and federal court litigation concerning Marin's 2014 primary nominating petition.

On this score we note that the entire premise of Marin's amended complaint is that the Commonwealth acted improperly when addressing his 2014 election complaints because he had endeavored to remove this election dispute to federal court. The difficulty with this assertion is that it continues to ignore a salient fact: The federal courts rejected Marin's removal petition, properly finding that this matter should be addressed in state court and could not be removed to federal court. Thus Marin persists in ignoring or discounting the stubborn fact that his removal petition was rejected by the district court; In re Nomination Petition of Mel M. Marin for the

Democratic Nomination for Member of Cong. in the 3rd Cong. Dist., No. 1:14-CV-669, 2014 WL 1612665, at *1 (M.D. Pa. Apr. 22, 2014), and the decision denying this removal petition was upheld by the United States Court of Appeals for the Third Circuit.  In re Marin, 567 F. App'x 67 (3d Cir. 2014). Marin also discounts prior rulings in litigation conducted before the Commonwealth Court, and later upheld by the Pennsylvania Supreme Court. In re Marin, 106 A.3d 678 (Pa. 2014) cert. dismissed sub nom. Marin v. Rice, 135 S. Ct. 2382 (2015).

On these facts, the collateral estoppel doctrine applies and defeats these claims advanced by Marin. Collateral estoppel, *res judicata* and issue preclusion are doctrines which play a vital role in litigation. It has long been recognized that "[t]he doctrine[] of . . . collateral estoppel, now . . termed . . . issue preclusion, 'shar[es] the common goals of judicial economy, predictability, and freedom from harassment....' Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir.1988). Generally speaking, the . . . doctrine of issue preclusion, 'precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted.' Melikian v. Corradetti, 791 F.2d 274, 277 (3d Cir.1986)." Electro-Miniatures Corp. v. Wendon Co., Inc. 889 F.2d 41, 44 (3d. Cir.1989)(citations omitted).

The parameters of this doctrine, which precludes relitigation of certain issues, have been defined by the United States Court of Appeals for the Third Circuit in the following terms:

> Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979). In its classic form, collateral estoppel also required "mutuality"-i.e., that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding. Parklane Hosiery, 439 U.S. at 326-27. Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary. See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 (1971); Parklane Hosiery, 439 U.S. at 329. For . . . non-mutual issue preclusion [] to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action. See Parklane Hosiery, 439 U.S. at 328; Blonder-Tongue Labs., 402 U.S. at 331.

Peloro v. United States, 488 F.3d 163, 174-5 (3d Cir. 2007). Stated succinctly, principles of collateral estoppel compel a later court to honor the an earlier decision of a matter that was actually litigated. Dici v. Commonwealth of Pa., 91 F.3d 542 (3d Cir. 1997). This doctrine, which involves an assessment of the overlap between issues presented in separate lawsuits, raises essentially legal questions which are often amenable to resolution by courts as a matter of law. See, e.g., Peloro v. United States,

supra; Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc, supra; Witkowski v. Welch, 173 F.3d 192, 198-205 (3d Cir. 1999); Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd.,, 63 F.3d 1227, 1231-9 (3d Cir. 1995)(summary judgment, offensive issue preclusion).

Here, we continue to find that, with respect to the claims made by Marin in the instant amended complaint concerning his prior state and federal court litigation regarding his 2014 nominating petitions, the legal requisites for issue preclusion are fully satisfied, since:  " '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979).  Therefore, these claims should be dismissed.[3]

_____

[3]We also note that we find that there is great force to the defendants' argument that an election law protests are not the type of action which may be removed to federal court. Indeed, federal courts frequently refuse to entertain removal petitions arising out of contested state elections. See e.g.,  In re Nomination Petition of Mel M. Marin for the Democratic Nomination for Member of Cong. in the 3rd Cong. Dist., No. 1:14-CV-669, 2014 WL 1612665, at *1 (M.D. Pa. Apr. 22, 2014);  In re Marin, 567 F. App'x 67 (3d Cir. 2014). See also, Aguon-Schulte v. Guam Election Comm'n., 469 F.3d 1236, 1238 (9th Cir. 2006);  Oliver v. Lewis, 891 F. Supp. 2d 839, 840 (S.D. Tex. 2012).

### 3.   The Rooker-Feldman Doctrine Also Continues to Bar Consideration of This Case

Moreover, Marin's amended complaint also persists in inviting this court to reject findings made by numerous state courts in 2014 in litigation conducted before the Commonwealth Court, and later upheld by the Pennsylvania Supreme Court. In re Marin, 106 A.3d 678 (Pa. 2014) cert. dismissed sub nom. Marin v. Rice, 135 S. Ct. 2382 (2015). Accordingly, the plaintiff necessarily urges us to sit as a state appellate court and review, re-examine and reject these prior state court rulings in Marin's state case.

As we have previously explained to Marin, this we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker-Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has

inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP,, 449 F.3d 542, 547 (3d Cir. 2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering lawsuits brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

This is precisely what Marin invites us to do here. In the past, when presented by previously litigated state election law claims, like Marin's, which involved "a bizarre set of facts," Whitehead v. Shugars, 71 F. App'x 99, 99 (3d Cir. 2003), and invited us to set aside state court interpretations of state law, federal courts have declined under the Rooker-Feldman doctrine to intervene in this prior state court litigation. Id. This principle continues to apply here. Thus, in this case, as in Whitehead, the Rooker-Feldman and *res judicata* doctrines combine to compel dismissal of this case, to the extent that Marin improperly invites us to act as a Pennsylvania appellate court for matters and claims relating to this 2014 state litigation arising out of the plaintiff's nominating petition.

### 4.      Marin May Not Sue State Agencies For Damages Under §1983

Further, to the extent that Marin's amended complaint seeks compensatory and punitive damages from the State Board of Elections, and state officials acting in their official capacity, this pleading also fails as a matter of law. Indeed this amended *pro se* complaint runs afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials.

First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against

one of the . . . States . . . .", U. S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996).  Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. Congress has not expressly abrogated this constitutional immunity with respect to federal civil rights lawsuits against the Pennsylvania State Police, and the Commonwealth clearly has not waived its immunity. Quite the contrary, The Commonwealth has specifically by statute invoked its Eleventh Amendment immunity in 42 Pa.C.S.A. §8521(b). This, while Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court, See 42 Pa.C.S.A. §8522, Section 8521(b) flatly states that: "Nothing contained in this subchapter shall be construed to waive the immunity of the

Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa.C.S.A. §8521(b).

The constitutional protections afforded to the states under the Eleventh Amendment also expressly apply to the state election agencies like the defendant agencies named in Marin's amended complaint.  See generally Green Party of Pennsylvania v. Aichele, 89 F. Supp. 3d 723, 754 (E.D. Pa.), aff'd, 103 F. Supp. 3d 681 (E.D. Pa. 2015). Moreover as a matter of statutory interpretation, the plaintiff cannot bring a damages action against this state agency or state officials in their official capacity since it is also well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. §1983, the principal federal civil rights statute. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989). Therefore, since these agencies of state government cannot be sued in this fashion in federal court, the state board of elections should be dismissed as a defendant from this damages action. Likewise, damages claims against the individual defendants in their official capacity should also be dismissed.

## 5.   Declaratory Judgment is Inappropriate Here

Marin's amended complaint also invites us to make a host of declaratory judgments relating to past elections, and potential future electoral concerns Marin envisions encountering as he pursues public office. We should decline this request.

Indeed, in the past when federal courts have been asked to issue declaratory judgment

in past or prospective election disputes they have often declined to do so observing

that:

> The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. "Whether declaratory relief should be granted in an appropriate case is committed to the sound discretion of the trial court." Berger v. Weinstein, No. 07–994, 2008 WL 3984164, at *3 (E.D.Pa. Aug. 26, 2008) (quoting Main Line Paving Co. v. Bd. of Educ., Sch. Dist. of Philadelphia, 725 F.Supp. 1349, 1357 (E.D.Pa.1989)); see also Wilton v. Seven Falls Co., 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) ("[A] district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial.... In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."); State Auto Ins. Cos. v. Summy, 234 F.3d 131, 133 (3d Cir.2000). The Third Circuit has set out the following general guidelines for the exercise of discretion under the Declaratory Judgment Act: "(1) the likelihood that the declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in a settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies." Terra Nova Ins. Co. v. 900 Bar, Inc., 887 F.2d 1213, 1224 (3d Cir.1989); United States v. Pennsylvania, Dep't of Envtl. Resources, 923 F.2d 1071, 1075 (3d Cir.1991) More generally, "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct ... [n]or is declaratory judgment meant simply to proclaim that one party is liable to another." Corliss v. O'Brien, 200 Fed.Appx. 80, 84 (3d Cir.2006) (upholding dismissal of plaintiff's declaratory relief claim, which asked that the District Court "declare that his constitutional rights were violated").

Hodinka v. Delaware Cty., 759 F. Supp. 2d 603, 610 (E.D. Pa. 2011).

In the instant case, when we look to the factors which guide our discretionary exercise of jurisdiction under the Declaratory Judgment Act, it is clear that these factors all weigh in favor of declining Marin's request for far-reaching and speculative declaratory relief.  First, it is apparent that other remedies exist under state law to address any of Marin's election campaign questions or concerns. In addition, aside from Marin's idiosyncratic concerns, there appears to be no broad public interest in addressing the matters raised by Marin in his amended complaint. Moreover, we are unaware of any great legal uncertainty regarding the application of state elections laws which require immediate clarification through litigation of the issues raised in Marin's amended complaint.  Further, we believe that gratuitous litigation of these matters by a person who no longer resides in Pennsylvania would not be convenient for the parties, and particularly the Commonwealth defendants. Finally, we conclude that to the extent that Marin seeks a declaratory judgment relating to past election board actions, his request is legally inappropriate, and should be rejected. Therefore, in the sound exercise of this court's discretion it should decline Marin's invitation to indulge in wide-ranging declaratory findings relating to Pennsylvania election laws. Hodinka v. Delaware Cty., 759 F. Supp. 2d 603, 610 (E.D. Pa. 2011).

6.   **Marin's Remaining Damages Claims Fail  as a Matter of  Law**

Finally, to the extent that we can discern the basis for Marin's remaining claims for more than $9,000,000 in damages, those claims appear to fail as a matter of law. In part, Marin seems to attempt to cobble together some form of First Amendment retaliation claim from the fact that his demands for special treatment and waivers from state election law requirements were not agreed to by the defendants.(Doc. 10, ¶¶159-170.)

In our view this claim fails as a matter of law. At the outset, we note that in bringing this First Amendment retaliation claim Marin faces an exacting burden of pleading and proof.  A plaintiff claiming that officials have retaliated against him for exercising his constitutional rights must plead and prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.  Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).   With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising h[er] rights."  Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

The third essential element to a retaliation claim is that there be a causal link between the exercise of a constitutional right and the adverse action taken against the

plaintiff.  Rauser, 241 F.3d at 333-34.  To establish this third, and crucial, component

to a constitutional retaliation claim, causation, a plaintiff must plead facts allowing

a reasonable inference of causation. In this setting:

> To establish the requisite causal connection a plaintiff usually must
> prove either (1) an unusually suggestive temporal proximity between the
> protected activity and the allegedly retaliatory action, or (2) a pattern of
> antagonism coupled with timing to establish a causal link. See Krouse
> v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997);
> Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997). In the
> absence of that proof the plaintiff must show that from the "evidence
> gleaned from the record as a whole" the trier of the fact should infer
> causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d
> Cir.2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Moreover, when examining these causation issues, we are specifically admonished

that:

> A court must be diligent in enforcing these causation requirements
> because otherwise a public actor cognizant of the possibility that
> litigation might be filed against him, particularly in his individual
> capacity, could be chilled from taking action that he deemed appropriate
> and, in fact, was appropriate. Consequently, a putative plaintiff by
> engaging in protected activity might be able to insulate himself from
> actions adverse to him that a public actor should take. The point we
> make is not theoretical as we do not doubt that public actors are well
> aware that persons disappointed with official decisions and actions
> frequently bring litigation against the actors responsible for the
> decisions or actions in their individual capacities, and the actors surely
> would want to avoid such unpleasant events. Thus, it would be natural
> for a public actor to attempt to head off a putative plaintiff with the
> unwarranted expenditure of public funds. Courts by their decisions
> should not encourage such activity and, by enforcing the requirement
> that a plaintiff show causation in a retaliation case, can avoid doing so
> as they will protect the public actor from unjustified litigation for his

appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Id. at 267-68.

Mindful of these concerns, courts have in the past carefully scrutinized claims of retaliation premised solely on circumstantial proof of a temporal proximity between the plaintiff's conduct and allegedly retaliatory acts. Indeed, this Court has spoken directly to the issue of what must be shown to state a valid complaint in this factual context, noting that:

To establish the causation element of a retaliation claim, a plaintiff must prove that his or her participation in a protected activity motivated the defendant to perform the retaliatory act. Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir.2002); Meenan v. Harrison, Civ. A. No. 3:03-CV-1300, 2006 WL 1000032, at *4 (M.D.Pa. Apr.13, 2006) (observing that a plaintiff must demonstrate that the exercise of First Amendment rights "played some substantial role" in the defendant's action). The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the causation element. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir.2003); see also Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir.1997) (stating that "temporal proximity merely provides an evidentiary basis from which an inference can be drawn"). For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Marasco, 318 F.3d at 512 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir.1997)) . . . [T]he Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, see Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 & n. 5 (3d Cir.2000), whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of . . . wrongdoing, Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir.2003). This suggests that the temporal proximity must be

measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.

Conklin v. Warrington Tp., No. 06-2245, 2009 WL 1227950, *3 (M.D.Pa. April 30,2009)

Applying this standard, courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks, months or years separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation. Thus, "[o]ur sister courts have held that a temporal proximity of as little as seventeen days was insufficient to establish causation. See Killen v. N.W. Human Servs., Inc., No. 06-4100, 2007 WL 2684541, at *8 (E.D.Pa. Sept.7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation); see also Farrell, 206 F.3d at 279 n. 6 (suggesting that temporal proximity of seven weeks would be insufficient to establish causation); Smith v. ABF Freight Sys., Inc., No. 04-2231, 2007 WL 3231969, at *11 (M.D.Pa. Oct.29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation); Mar v. City of McKeesport, No. 05-19, 2007 WL 2769718, at *4 (W.D.Pa. Sept.20, 2007) (holding that temporal proximity of three months was insufficient to establish causation)." Fischer v. Transue, 04-2756, 2008 WL 3981521, *10 (M.D.Pa. Aug. 22, 2008)(holding that temporal proximity of three weeks was insufficient to establish causation).

Here we find that Marin has not alleged well-pleaded facts which would show that the straightforward act of declining to grant a waiver from some state legal requirement constitutes an act of retaliation which violates the First Amendment. Indeed, we note the potentially breathtaking scope of Marin's claim. Marin seems to posit that his demand for waivers from requirements of state election law was constitutionally protected activity. He then asserts that the state's application of this state law in the face of his demand for a waiver of that law inherently violated his First Amendment rights. This theory, taken to its logical extreme, would forbid any discretionary acts by state officials, declining to waive legal requirements, since the mere act of declining a waiver request would in Marin's view constitute a *per se* violation of his "right" to make the request.

We further note that, even if Marin had stated a colorable constitutional claim, the defendants would still be entitled to qualified immunity from these claims for damages. In order to establish a civil rights claim Marin must show the deprivation of a right secured by the United States Constitution or the laws of the United States. Satisfying these elements alone, however, does not guarantee that Marin is entitled to recover damages from these public officials. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson

v. Callahan, 555 U.S. 223 (2009).  This doctrine, known as qualified immunity,

provides officials performing discretionary functions not only defense to liability, but

also "immunity from suit."  Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671

(M.D. Pa. 2009) (Conner, J.) (citations omitted).  Qualified immunity

> balances two important interests – the need to hold public officials
> accountable when they exercise power irresponsibly and the need to
> shield officials from harassment, distraction, and liability when they
> perform their duties reasonably.  The protection of qualified immunity
> applies regardless of whether the government official's error is "a
> mistake of law, a mistake of fact, or a mistake based on mixed questions
> of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given

case, require a court to undertake two distinct inquiries.  First, the court must evaluate

whether the defendant violated a constitutional right.  Saucier v. Katz, 533 U.S. 194,

201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d

199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006).  If the

defendant did not actually commit a constitutional violation, then the court must find

in the defendant's favor.  Saucier, 533 U.S. at 201.  If the defendant is found to have

committed a constitutional violation, the court must undertake a second, related

inquiry to assess whether the constitutional right in question was "clearly established"

at the time the defendant acted.  Pearson, 555 U.S. at 232; Saucier, 533 U.S. at 201-

02.  The Supreme Court has instructed that a right is clearly established for purposes

of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right.  <u>Williams</u>, 455 F.3d at 191 (citing <u>Saucier</u>, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." <u>Wilson</u>, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002) (quoting <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." <u>Wilson</u>, 455 F.3d at 191 (quoting <u>Hope</u>, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, <u>Pearson</u>, 555 U.S. at 239-40, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. <u>Id.</u> Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity.  <u>Gruenke v. Seip</u>,

225 F.3d 290, 299-300 (3d Cir. 2000); <u>Crouse</u>, 668 F. Supp. 2d at 671; <u>see also</u> <u>Grant</u>

<u>v. City of Pittsburgh</u>, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of

[the] assertion of qualified immunity is a careful examination of the record . . . to

establish . . . a detailed factual description of the actions of each individual defendant

(viewed in a light most favorable to the plaintiff).") Because qualified immunity

entails a consideration of whether the law was clearly established at the time of a

defendant's conduct, this defense, which focuses on the state of the law, presents a

question of law for the court. <u>See</u> <u>Montanez v. Thompson</u>, 603 F.3d 243 (3d Cir.

2010).

Here, to the extent that Marin's claims for damages can be understood, those

claims seem to rest upon Marin's view that actions taken by state election officials,

in conformance with state law, and often at the direction of state courts, somehow

violated his clearly established constitutional rights. Since these state officials could

not have anticipated that their actions, which were taken in accordance with settled

state law, would in some way violate "clearly established statutory or constitutional

right[] of which a reasonable person would have known," <u>Wilson v. Layne</u>, 526 U.S.

603, 609 (1999), they would be entitled to qualified immunity from damages and all

of Marin's damages claims would fail as  matter of law.

### III.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the

Defendants' Motion to Dismiss (Doc. 13) be granted and the Plaintiff's complaint be

dismissed.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen
(14) days after being served with a copy thereof. Such party shall file
with the clerk of court, and serve on the magistrate judge and all parties,
written objections which shall specifically identify the portions of the
proposed findings, recommendations or report to which objection is
made and the basis for such objections. The briefing requirements set
forth in Local Rule 72.2 shall apply. A judge shall make a de novo
determination of those portions of the report or specified  proposed
findings or recommendations to which objection is made and may
accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge. The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis of
that record. The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.

Submitted this 19th day of April, 2016.

_S/Martin C. Carlson_
Martin C. Carlson

United States Magistrate Judge